COPY

Peter A. Davidson (SBN 76194)
pdavidson@ecjlaw.com
ERVIN, COHEN & JESSUP LLP
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone (310) 273-6333
Facsimile (310) 859-2325

Attorneys for James H. Donell, Receiver

FILED
2012 FEB 24 PM 3:52
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ________

ERVIN COHEN & JESSUP LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JAMES H. DONELL, RECEIVER FOR NEWPOINT FINANCIAL SERVICES, INC. and NEWPOINT MORTGAGE BANKERS, INC.,

Plaintiff,

v.

OMID J. BENDAVID,

Defendant.

CASE NO. CV 12 1618-SVW (JCGx)

**COMPLAINT TO AVOID FRAUDULENT TRANSFERS AND RECOVER PROPERTY TRANSFERRED; FOR UNJUST ENRICHMENT AND RESTITUTION**

Plaintiff James H. Donell ("Receiver"), receiver for NewPoint Financial Services, Inc. ("NewPoint") and Newpoint Mortgage Bankers, Inc.("Bankers") (collectively "NewPoint Entities"), avers as follows:

**I.**

**INTRODUCTION**

1. NewPoint is a Nevada company which was created and operated by John Farahi.

2. Bankers is a California company which was created and operated by John Farahi.

3. Farahi was the co-owner, president, secretary and treasurer of NewPoint.

4. Gissou Rastegar Farahi ("Gissou") is Farahi's wife and was the co-owner of NewPoint and a former vice-president of NewPoint.

5. Farahi and Gissou were the trustees and beneficiaries of the Farahi Family Trust (the "Family Trust").

6. Since at least 2003, the NewPoint Entities, controlled by Farahi and Gissou, offered and sold more than $20 million worth of debentures to more than one hundred investors.

7. The vast majority of the money raised was transferred to accounts held by Farahi and Gissou. They, in turn, used the investor funds to, among other things, construct a multi-million dollar personal residence in Beverly Hills, California and to engage in risky options futures trading in the stock market in which Farahi and Gissou lost more than $18 million in 2008 and the beginning of 2009.

8. Many investors learned of the NewPoint Entities through a daily finance radio program that Farahi hosted on a Farsi language radio station in the Los Angeles area.

9. Investors were typically solicited to invest by Farahi, Gissou and/or Elaheh Amouei ("Amouei"), NewPoint's controller, after making an appointment to discuss investment opportunities offered by the NewPoint Entities.

10. Investors were misled in several ways. Investors were told the NewPoint debentures and related investments were low-risk. Many investors were also falsely told that they were investing in FDIC insured certificates of deposit, government bonds, and/or corporate bonds issued by companies backed by funds from the Troubled Asset Relief Program ("TARP").

11. Farahi, Gissou and Amouei failed to disclose to investors that their money would be provided to the Farahis and used for risky trading in options futures and transferred to the Family Trust or to Triple "J" Plus, LLC ("Triple J") to be used for the construction of the Farahi and Gissou multi-million dollar residence.

12. NewPoint, Farahi, Gissou and Amouei are defendants in an enforcement action commenced in this Court by the Securities and Exchange Commission ("SEC") on January 8, 2010, entitled *Securities and Exchange Commission v. Newpoint, Financial Services, Inc., et. al.*, Case No. 10 CV 0124-DDP-(JEMX) ("SEC Action").

13. The SEC alleges in its complaint that in 2003, NewPoint began offering and selling its debentures to investors.

14. In connection with the offer and sale of NewPoint's debentures, material misrepresentations regarding the investment were made and material facts omitted.

15. Investors were told that the NewPoint Entities investments were low-risk.

16. Some investors were told that they were investing in FDIC insured CDs, government bonds, and/or corporate bonds issued by companies backed by TARP funds.

17. It was not disclosed to investors that their money would be used for risky options futures trading in a brokerage account held by Gissou or transferred to other entities controlled by Farahi and Gissou, such as transfers to the Family Trust or Triple "J" to be used to build a multi-million dollar home for Farahi and Gissou.

18. The NewPoint Entities, through the efforts of Farahi, Gissou and Amouei, raised more than $20 million from the public.

19. Investor funds were initially deposited into a NewPoint account or accounts of Bankers controlled by Farahi and Gissou.

20. The vast majority of investor funds were then transferred either to Triple "J" or to the Family Trust.

21. On January 8, 2010 the Court hearing the SEC Action granted a Temporary Restraining Order, order freezing assets, and appointed a temporary Receiver.

22. James H. Donell was appointed as receiver for NewPoint and its affiliates, including Bankers, in the SEC Action.

23. The Court in the SEC Action has specifically authorized the Receiver to bring this Action.

## II.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over the SEC Action pursuant to sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b), 77t(d)(1) and 77v(a), and sections 21(d)(1),(21)(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78(u)(1), 78u(d)(3)(A), 78u(e) and 78aa.

25. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367 and because this action is ancillary to the SEC Action and the receivership pending before this Court. Donell v. Kowell, 533 F.3d 762 (9th Cir. 2008).

26. This action involves the same series of transactions as the SEC Action.

27. Venue is proper in this district, because this action is ancillary to the SEC Action and the receivership currently pending before this Court.

## III.

## THE PARTIES

28. The Receiver is the duly appointed and acting permanent receiver of NewPoint and its affiliates, including Bankers. The Receiver was appointed by order of the United States District Court, Central District of California in the SEC Action.

ERVIN COHEN & JESSUP LLP

29. Defendant Omid J. Bendavid ("Defendant") is an individual who resides, on information and belief, in Rancho Palos Verdes, California.

## IV.

## GENERAL ALLEGATIONS

### A. THE SEC ACTION

30. On January 8, 2010, the SEC filed a complaint against NewPoint, Farahi, Gissou and Amouei, accompanied by an Emergency Ex Parte Application for Temporary Restraining Order and Orders: (1) Freezing Assets; (2) Appointing a Temporary Receiver; (3) Prohibiting the Destruction of Documents; (4) Requiring Accounting; and (5) Order to Show Cause Re Preliminary Injunction ("TRO") and appointment of Permanent Receiver.

31. The Complaint alleged that the defendants (1) engaged in the offer and sale of unregistered securities in violation of Section 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), and (2) committed fraud in the offer and sale of securities in violation of Section 17(a) of the Securities Act, and (3) committed fraud in connection with the purchase and sale of securities under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

32. The Court issued a TRO and an Order to Show Cause why the TRO should not be converted into a Preliminary Injunction and why the appointment of a receiver should not become permanent.

33. On February 17, 2010, the Court converted the Receiver's temporary appointment to that of a permanent Receiver.

### B. THE OPERATION OF NEWPOINT

34. Farahi, with the aid of Gissou and Amouei, through the operation of NewPoint and affiliated entities, including Bankers, solicited money from members of the public ostensibly for the purchase of debentures.

35. In 2003, NewPoint began offering and selling its debentures to investors.



ERVIN COHEN & JESSUP LLP

36. Farahi was NewPoint's co-owner and president. Farahi also controlled Bankers.

37. Farahi had a finance-related program on a local Farsi language radio station, and gave public talks regarding finance.

38. Many NewPoint Entities investors learned of the NewPoint Entities through Farahi's radio program and made appointments to meet with him at NewPoint's offices in order to discuss investment opportunities.

39. During these meetings, investors were solicited to purchase debentures issued by the NewPoint Entities.

40. Investors interested in purchasing the debentures usually filled out a subscription agreement, but were provided with little other material in connection with their investment.

41. Most of the investors are residents of California; however, at least one was a resident of the state of Washington at the time she invested.

42. In connection with the offer and sale of the debentures, material misrepresentations regarding the investment were made and material facts omitted.

43. Investors were told that the investment was low-risk.

44. Some investors were told that they were investing in FDIC insured CDs, government bonds, and/or corporate bonds issued by companies backed by TARP funds.

45. It was not disclosed to investors that their money would be used for risky options futures trading in a brokerage account held by Gissou or transferred to other entities controlled by Farahi and Gissou, such as transfers to the Family Trust or to Triple "J" to be used to build a multi-million dollar home for Farahi and Gissou.

46. The NewPoint Entities, through the efforts of Farahi, Gissou and Amouei, raised more than $20 million from the public.

ERVIN COHEN & JESSUP LLP

47. Investor funds were initially deposited into a NewPoint or Bankers account controlled by Farahi and Gissou.

48. The vast majority of investor funds were then transferred either to Triple "J" or to the Family Trust.

49. Funds transferred to Triple "J" were primarily used to construct Farahi and Gissou's residence in Beverly Hills, California.

50. Investor funds that were transferred to the Family Trust were later transferred to a brokerage account held by Gissou at Interactive Brokers and invested in risky options futures.

51. Farahi made most of the trading decisions in the brokerage account.

52. The options trading by Farahi and Gissou resulted in more than $18 million in losses throughout the end of 2008 and the beginning of 2009.

53. The NewPoint Entities, at the direction of Farahi, returned money to certain favored investors, at the expense of other investors whom were not repaid.

54. Investors who invested in the early stages of the NewPoint Entities' offerings sometimes received substantial disbursements, as purported returns on their investments.

55. The NewPoint Entities were a Ponzi scheme in which very little of the money obtained from investors was invested in any legitimate money making investments, and amounts paid to investors were paid from other investors' funds.

56. Because of the lack of profitable investments made by the NewPoint Entities, and the diversion of investor funds for personal purposes by Farahi and Gissou, the only source of revenue to repay investors was funds from other investors.

57. As a result of the Ponzi scheme and fraud perpetrated by NewPoint, Farahi, Gissou and Amouei, the NewPoint Entities investors lost millions of dollars.

ERVIN COHEN & JESSUP LLP

C. **OMID J. BENDAVID**

58. Defendant obtained funds derived from the Ponzi scheme well in excess of the amount he invested with the NewPoint Entities.

59. The Receiver has demanded the return of these funds from Defendant.

**FIRST CLAIM FOR RELIEF**

**(For Avoidance of and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(1))**

60. The Receiver reavers and incorporates by this reference paragraphs 1 through 59, above, as though set forth herein in full.

61. Defendant invested with the NewPoint Entities.

62. Defendant invested $95,422.34 (hereinafter "Principal Investment").

63. Defendant received payments from the NewPoint Entities on his investment totaling $105,067.13.

64. As a result of the payment made to him, Defendant received $9,644.79 more than his Principal Investment.

65. The payments made to Defendant by the NewPoint Entities were made with the actual intent to hinder, delay or defraud the NewPoint Entities' investors.

66. The NewPoint Entities investors who did not receive back all of their principal investment are creditors of the NewPoint Entities.

67. The NewPoint Entities presently have one or more creditors whose claim arose either before or after the payments to Defendant on his investment in excess of Defendant's Principal Investment.

68. The payments made to Defendant over Defendant's Principal Investment are avoidable by the Receiver under applicable law, including California Civil Code Section 3439.04(a)(1).

69. The Receiver is entitled to damages from Defendant in a sum of not less than $9,644.79 with interest as provided by law from the date of each payment exceeding Defendant's Principal Investment.



ERVIN COHEN & JESSUP LLP

## SECOND CLAIM FOR RELIEF

**(For Avoidance of and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(2))**

70. The Receiver reavers and incorporates by this reference paragraphs 1 through 59, 61 through 64 above, as though set forth herein in full.

71. The payments made to Defendant in excess of Defendant's Principal Investment were made without Defendant giving a reasonably equivalent value to the NewPoint Entities in exchange for the payments.

72. At the time the payments were made to Defendant in excess of Defendant's Principal Investment, the NewPoint Entities were engaged in or were about to engage in a business or transaction for which the NewPoint Entities' remaining assets were unreasonably small in relation to the business transaction.

73. At the time the payments were made to Defendant in excess of Defendant's Principal Investment the NewPoint Entities believed or reasonably should have believed they would incur debts beyond their ability to pay them as they became due.

74. The NewPoint Entities presently have one or more creditors whose claims existed prior to the payments to Defendant in excess of Defendant's Principal Investment.

75. The NewPoint Entities presently have one or more creditors whose claims arose after the payments to Defendant in excess of Defendant's Principal Investment.

76. The payments to Defendant in excess of Defendant's Principal Investment are avoidable by the Receiver under applicable law, including California Code Sections 3439.04(a)(2).

77. The Receiver is entitled to damages from Defendant in a sum of not less than $9,644.79, with interest as provided by law from the date of each payment in excess of Defendant's Principal Investment.



ERVIN COHEN & JESSUP LLP

**THIRD CLAIM FOR RELIEF**

**(For Avoidance of and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.05)**

78. The Receiver reavers and incorporates by this reference paragraphs 1 through 59, 61 through 64 above, as though set forth herein in full.

79. The payments made to Defendant in excess of Defendant's Principal Investment were made without Defendant giving a reasonably equivalent value to the NewPoint Entities in exchange for the payments.

80. At the time the payments were made to Defendant in excess of Defendant's Principal Investment the NewPoint Entities were insolvent.

81. The NewPoint Entities presently have one or more creditors whose claims existed prior to the payments to Defendant in excess of Defendant's Principal Investment.

82. The payments to Defendant in excess of Defendant's Principal Investment are avoidable by the Receiver under applicable laws, including California Civil Code Section 3439.05.

83. The Receiver is entitled to damages from Defendant, in a sum of not less than $9,644.79 with interest as provided by law from the date of each payment in excess of Defendant's Principal Investment.

**FOURTH CLAIM FOR RELIEF**

**(Unjust Enrichment/Restitution)**

84. The Receiver reavers and incorporates by this reference paragraphs 1 through 59, 61 through 64 above, as though set forth herein in full.

85. Defendant received at least $9,644.79 in payments from the NewPoint Entities in excess of amounts he invested.

86. The funds received by Defendant were the proceeds of the NewPoint Entities' Ponzi scheme, and were paid from monies obtained from other the NewPoint Entities investors.

87. As a result, Defendant has profited from the operation of the NewPoint Entities fraudulent scheme. If permitted to retain the transferred funds, Defendant would be unjustly enriched at the expense of the numerous NewPoint Entities investors that, in the aggregate, have lost millions of dollars.

88. As a proximate result of his actions alleged herein, Defendant has received a benefit to which he was not entitled. Defendant therefore have been unjustly enriched, and the Receiver is entitled to restitution in the amount of $9,644.79.

## PRAYER

WHEREFORE, the Receiver prays as follows:

1. For judgment against Defendant for $9,644.79.

2. For interest at the legal rate on the amount of the fraudulent transfers from the date of the transfers.

3. For costs.

4. For such other and further relief as the Court deems appropriate.

Dated: February 14, 2012

Respectfully submitted,

ERVIN COHEN & JESSUP LLP

By: ______________________

PETER A. DAVIDSON,
Attorneys for James H. Donell,
Receiver

ERVIN COHEN & JESSUP LLP

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

**CV12- 1618 SVW (JCGx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

**[X] Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

**[ ] Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

**[ ] Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

ORIGINAL

Name & Address:
Peter A. Davidson (SBN 76194)
pdavidson@ecjlaw.com
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212-2974

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES H. DONELL, Receiver for NewPoint Financial Services, Inc. and NewPoint Mortgage Bankers, Inc., PLAINTIFF(S) v. OMID J. BENDAVID, DEFENDANT(S). | CASE NUMBER CV 12 1618-SVW **SUMMONS** |

TO: DEFENDANT(S): Omid J. Bendavid

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Peter A. Davidson, whose address is Ervin, Cohen & Jessup LLP, 9401 Wilshire Blvd., 9th Fl., Beverly Hills, CA 90212-2974. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: FEB 24 2012

By: [signature] Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

COPY

Name & Address:
Peter A. Davidson (SBN 76194)
pdavidson@ecjlaw.com
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212-2974

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES H. DONELL, Receiver for NewPoint Financial Services, Inc. and NewPoint Mortgage Bankers, Inc., PLAINTIFF(S) | CASE NUMBER CV 12 1618 -SVW(JCGx) |
| v. | |
| OMID J. BENDAVID, DEFENDANT(S). | **SUMMONS** |

TO: DEFENDANT(S): Omid J. Bendavid

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Peter A. Davidson, whose address is Ervin, Cohen & Jessup LLP, 9401 Wilshire Blvd., 9th Fl., Beverly Hills, CA 90212-2974. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clark, U.S. District Court

Dated: FEB 24 2012

By: MARILYN DAVIS
Deputy Clerk

SEAL

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

COPY

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JAMES H. DONELL, Receiver for NewPoint Financial Services, Inc. and NewPoint Mortgage Bankers, Inc.

**DEFENDANTS**
OMID J. BENDAVID

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Peter A. Davidson, Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Fl., Beverly Hills, CA 90212-2974
Tel: (310) 273-6333; Fax: (310) 859-2325

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☑ **MONEY DEMANDED IN COMPLAINT:** $ 9,644.79

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
To recover fraudulent transfers under California Code of Civil Procedure 3439.04(a)(1)-3439.04(a)(2) and 3439.05.

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV 12 1618

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 10-CV-0124 DDP (JEMx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** February 17, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |